THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BEVERLY A. SANDERS,<br><br>                   Plaintiff,<br><br>vs.<br><br>JOHN E. POTTER, Postmaster General, U.S.<br>Postal Service,<br><br>                   Defendant. | NO. C06-1288-TSZ<br><br>ORDER |

This matter comes before the Court on Defendant John E. Potter's Motion for

Summary Judgment, docket no. 21. Having reviewed all papers filed in support of and

in opposition to the Motion, the Court does hereby GRANT Defendant's Motion for

Summary Judgment, docket no. 21, and does hereby GRANT, *sua sponte*, summary

judgment dismissing Plaintiff's claim of discrimination on account of national origin,

docket no. 3, at 3.

## BACKGROUND

Plaintiff is a black female who worked for the United States Postal Service ("USPS") from 1977 until her removal on August 20, 2004. Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 10; Ex. A to Decl. of Rebecca S. Cohen, docket no. 22-2, at 2. Plaintiff has brought a number of discrimination claims, all of which she claims stem from treatment she received after beginning a new shift assignment on June 17, 2000, at the USPS Airport Mail Center ("AMC").

Specifically, Plaintiff alleges that she suffered discriminatory treatment as to seven different categories. These categories include alleged discrimination as to race or color, religion, sex, and national origin, in violation of 42 U.S.C. § 2000e-16(a) (2008). Compl., docket no. 3, at 3. In addition, Plaintiff claims discrimination on account of disability, in violation of 29 U.S.C. § 791(a)-(b) (2008). First Attachment to Compl., docket no. 3-2, at 1. Also, Plaintiff claims discrimination on the basis of her age, in violation of 29 U.S.C. § 633a(a) (2008). First Attachment to Compl., docket no. 3-2, at 1. Finally, Plaintiff claims that Defendant retaliated against her based upon her previous Equal Employment Opportunity ("EEO") activities, in violation of 42 U.S.C. § 2000e-3(a) (2008). First Attachment to Compl., docket no. 3-2, at 1.

Plaintiff suffered an on-the-job injury on December 10, 2002. First Attachment to Compl., docket no. 3-2, at 2, 19. This injury and the ensuing interaction between Plaintiff and Defendant eventually led to Plaintiff's suspension and removal from

USPS. As a result of the injury, Plaintiff had the following physical limitations: (1) lifting/carrying no more than ten pounds, no more than four hours per day; (2) sitting/standing/walking intermittently for no more than thirty minutes each day; and (3) pushing/pulling up to ten pounds no more than 1 hour per day, 4 days per week. Ex. D. to Decl. of Rebecca S. Cohen, docket no. 22-2, at 9. Plaintiff then started a period of disability leave that ran from December 2002 to June 2003, during which time she received compensation from the federal Office of Worker's Compensation Program ("OWCP"). Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 28-29. However, Plaintiff's request for an additional period of disability compensation beyond June 2003 was denied when a second-opinion exam directed by the OWCP concluded that her injuries "had resolved in their entirety," allowing her to return to work without restrictions. Ex. E. to Decl. of Rebecca S. Cohen, docket no. 22-2, at 12.

Plaintiff contacted Dennis Lakey, Manager of Distribution Operations at the AMC, in April 2003, at which time she and Mr. Lakey discussed the possibility of Plaintiff returning to work. First Attachment to Compl., docket no. 3-2, at 2. Then, on May 27, 2003, Plaintiff was offered and accepted a temporary limited duty job assignment as a Security Door Guard Auditor at the AMC. Ex. F to Decl. of Rebecca S. Cohen, docket no. 22-2, at 15. However, as a result of OWCP closing Plaintiff's claim and determining that she could return to full duties, Plaintiff's temporary limited duty assignment ended in August 2003. Ex. DD to Decl. of Rebecca S. Cohen, docket 22-3, at 38-39. Plaintiff then submitted a Request for Temporary Light Duty on

September 2, 2003. First Attachment to Compl., docket no. 3-2, at 36. However,

Plaintiff was notified by letter dated January 9, 2004, that no work within her medical

restrictions could be found at the AMC, and thus, Plaintiff was nominated to the

Seattle District Reasonable Accommodation Committee for review. <u>Id.</u> at 42. In

addition, the letter informed Plaintiff that the AMC lacked current medical

documentation for her condition and specified that Plaintiff was required to provide

medical documentation every thirty days until released to full duty. The letter

included a form for Plaintiff's physician to complete with the instruction that the

documentation be returned within fifteen days of receipt of the letter. <u>Id.</u> The letter

stated in part:

> Effective immediately, you are required to request your
> leave of absences by completing PS Form 3971, 'Request
> for or Notification of Absence.' You must submit the PS
> Form 3971's to your supervisor prior to leave being taken.
> I have enclosed PS 3971's for your use. Failure to submit
> PS Form 3971's may result in your being carried as . . .
> Absent Without Official Leave.

<u>Id.</u>

In a letter dated January 16, 2004, addressed to Plaintiff from Administrative

Supervisor Ted Rollolazo, Mr. Rollolazo wrote that Plaintiff had come to the AMC

that day to provide medical documentation and had been advised of Plaintiff's

responsibility to submit a leave request. Ex. K to Decl. of Rebecca S. Cohen, docket

no. 22-2, at 25. The letter also stated that, because Plaintiff had allegedly refused to

request leave, she would be carried as Absent Without Official Leave ("AWOL")

effective that day.  Id.  By letter dated January 23, 2004, Plaintiff was advised that she

was considered AWOL and was required to report for an investigative interview with

Supervisor Eric Colon on January 30, 2004.  Ex. L. to Decl. of Rebecca S. Cohen,

docket no. 22-2, at 27.  A third letter, dated February 5, 2004, indicates that both the

January 16, 2004, and January 23, 2004, letters were returned unclaimed, and stated

that Plaintiff had not appeared for the investigative interview on January 30, 2004.  Ex.

M. to Decl. of Rebecca S. Cohen, docket no. 22-2, at 29.

On February 25, 2004, Plaintiff was sent a letter notifying her that she was

being suspended for a period of fourteen days for having been AWOL.  First

Attachment to Compl., docket no. 3-2, at 43.  The letter recounts in part that Plaintiff

attended an investigative interview on February11, 2004.  By a letter dated March 4,

2004, Plaintiff was informed that she was still required to submit additional medical

documentation.  Second Attachment to Compl., docket no. 3-3, at 1.  The letter

explained that a search for light duty assignments had not located any available

positions.  Id.

On March 10, 2004, the District Reasonable Accommodation Committee

notified Plaintiff of a meeting scheduled for March 16, 2004, at which Plaintiff's

request for accommodation would be discussed.  Ex. P to Decl. of Rebecca S. Cohen,

docket no. 22-2, at 37.  Ultimately, the meeting was rescheduled for April 9, 2004.

Second Attachment to Compl., docket no. 3-3, at 3.  In the interim, effective April 3,

2004, Plaintiff was administratively removed from her bid position, at which time

Plaintiff became an unassigned Mail Handler Tech until such time as she could perform the core duties of her position with or without accommodation. Ex. S to Decl. of Rebecca S. Cohen, docket no. 22-2, at 43. Later, on May 6, 2004, the District Reasonable Accommodation Committee notified Plaintiff that the Committee had determined that reasonable accommodation was not required because Plaintiff's condition was not permanent. Ex. T to Decl. of Rebecca S. Cohen, docket no. 22-2, at 45.

On May 24, 2004, Plaintiff was notified by letter that her request for reassignment to light duty was being denied and further advising Plaintiff that, because she was physically unable to perform the duties of her position, action could be initiated to remove her from the Postal Service. Second Attachment to Compl., docket no. 3-3, at 7. The letter further informed Plaintiff that, before any action could be taken against her, she could consider: (1) voluntarily changing to another craft in which Plaintiff could physically perform the required functions; (2) applying for disability retirement; or (3) resigning. Id. The letter also instructed Plaintiff to contact Plant Manager Kenn P. Messenger no later than June 1, 2004, regarding these options, and advised her that failure to contact Mr. Messenger by that date could result in corrective action. Id.

On July 9, 2004, Plaintiff was notified by letter that she was to be removed from USPS effective August 20, 2004, because of her inability to perform the duties of her position. Second Attachment to Compl., docket no. 3-3, at 10.

Throughout much of the time-period discussed above, Plaintiff was also involved in the EEO complaint process. However, the EEO Commission eventually affirmed USPS's findings that no discrimination had taken place, and Plaintiff's request for reconsideration was denied on June 7, 2006. Ex. Z to Decl. of Rebecca S. Cohen, docket no. 22-3, at 5. Plaintiff filed this action on September 8, 2006.

## DISCUSSION

### I.      Standard for Summary Judgment

A court should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, Celotex, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent. Anderson, 477 U.S. at 249.

When a properly supported motion for summary judgment has been presented, the non-moving party "may not rely merely on allegations or denials" of its pleadings. Fed. R. Civ. P. 56(e). The non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. Id.; Anderson, 477 U.S. at 256. A party cannot create a genuine issue of fact by simply contradicting his or her

own previous sworn statement, <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 806 (1999), or by asserting "some metaphysical doubt" as to the material facts, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Likewise, discrediting the testimony proffered by the moving party will not usually constitute a sufficient response to a motion for summary judgment. <u>Anderson</u>, 477 U.S. at 256-57.

To survive a motion for summary judgment, the non-moving party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. <u>Id.</u> at 255. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. <u>See</u> <u>Miller v. Glenn Miller Prod., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006); <u>see</u> <u>also</u> <u>Beard v. Banks</u>, 528 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting <u>Celotex</u>, 477 U.S. at 322)).

## II.     Plaintiff's Rehabilitation Act Claim

Though it is not clear from Plaintiff's Complaint, she appears to allege both lack of accommodation and disparate treatment on account of her alleged disability. First Attachment to Compl., docket no. 3-2, at 1-2 (alleging that Plaintiff suffered a "lack of accommodation"); Plaintiff's Response to Motion for Summary Judgment,

and Continuance of Case for Decision by Court ("Response"), docket no. 32, at 8, lines 20-22 (alleging that Defendant terminated Plaintiff "due to her work injury and the inability and lack of desire of the USPS to accommodate her according to the ADA"). Plaintiff does not segregate what alleged facts and authority support her allegations of a failure to accommodate, versus those that support the allegation of disparate treatment.

As to Plaintiff's alleged disability, she seems to allege both physical and psychological conditions. As to the alleged physical disability, Plaintiff alleges that her physician, Dr. Karl Singer, determined that her on-the-job injuries are "permanent." Id. at 3. In support of this allegation, Plaintiff provided a U.S. Department of Labor Form CA-20, Attending Physician's Report, dated July 2, 2004, in which Dr. Singer remarked: "[N]o overhead lifting reaching, limited pushing or pulling weight limits of 10 lbs *permanent affect*, limited duty." Second Attachment to Compl., docket no. 3-3, at 9 (emphasis added). Regarding Plaintiff's alleged psychological condition, she was evaluated by Rehabilitation Psychologist Frederick Silver on April 13, 2005. Dr. Silver concluded in relevant part that "[t]he stress of chronic pain . . . has undoubtedly taken a significant toll on [Plaintiff's] self-confidence, coping capacity, and her expectations for the future." Second Attachment to Compl., docket no. 3-3, at 17.

Beyond Plaintiff's alleged disability or disabilities, she points to specific instances of conduct allegedly evidencing a failure to accommodate and/or disparate

treatment. First, Plaintiff claims that supervisor Ted Rollolazo approached her at the AMC on an unspecified date to speak to her "about . . . filling out 3971's [(leave slips)]," which Plaintiff alleges was "just another way to be harassed by . . . Dennis Lakey." First Attachment to Compl., docket no. 3-2, at 3; Response, docket no. 32, at 8 (characterizing the conversation with Ted Rollolazo as "more harassing conduct of the Employer due to [Plaintiff's] disability"). It is not clear whether Plaintiff claims that this alleged harassment constituted disparate treatment on account of her alleged disability, but it is clear that the requested leave slips were in connection with Plaintiff's medical leave. Second, Plaintiff alleges that, after she was removed from her temporary limited duty job assignment as a Security Door Guard Auditor, Plaintiff was not then offered another position. First Attachment to Compl., docket no. 3-2, at 3; Response, docket no. 32, at 7 (alleging that Plaintiff was "removed . . . from light duty even though her primary physician stated that she needed restrictions to perform at work"). Third, Plaintiff alleges that she was given a fourteen-day suspension, despite the fact that she was absent due to an on-the-job injury. First Attachment to Compl., docket no. 3-2, at 3. Finally, Plaintiff alleges that she was terminated "due to her work injury." Response, docket no. 32, at 8, lines 20-22.

### A. Failure to Accommodate

Under the Rehabilitation Act, federal employees, including those employed by USPS, can seek relief for alleged discrimination on account of disability. 29 U.S.C.

§ 791(a)-(b) (2008).  The implementing regulations of the Rehabilitation Act specify

that federal agencies shall give full consideration to the hiring, placement, and

advancement of "qualified individuals with disabilities."  29 C.F.R. § 1614.203(a)

(2008).  The regulations further specify that the standards used to determine a violation

of the Rehabilitation Act are those set out in the Americans With Disabilities Act

("ADA") of 1990, 42 U.S.C. §§ 12101, 12111 & 12201 relating to employment.

29 C.F.R. § 1614.203(b) (2008); see also Vinson v. Thomas, 288 F.3d 1145, 1152 n.7

(9th Cir. 2002) (explaining that there is no significant difference in the analysis of

rights and obligations created by the ADA and the Rehabilitation Act, and thus the two

Acts are construed the same).  Under the ADA, a "qualified individual with a

disability" is:

> an individual with a disability who satisfies the requisite
> skill, experience, education and other job-related
> requirements of the employment position such individual
> holds or desires, and who, with or without reasonable
> accommodation, can perform the essential functions of
> such position.

29 C.F.R. § 1630.2(m) (2008).

When a plaintiff alleges a failure to accommodate a disability under the

Rehabilitation Act, the burden is on the plaintiff to prove that she or he is a qualified

individual with a disability.  Buckingham v. U.S., 998 F.2d 735, 739-40 (9th Cir.

1993).  Then, if accommodation of the plaintiff as a qualified individual with a

disability is required to enable the plaintiff to perform the essential functions of the

job, the plaintiff must provide evidence sufficient to make at least a facial showing that

reasonable accommodation is possible. Id. at 740. If in response to the plaintiff's evidence that reasonable accommodation can be made, the employer presents credible evidence that reasonable accommodation is not possible or practicable, the plaintiff bears the burden of coming forward with evidence that suggests that accommodation may in fact be reasonably made. Sisson v. Helms, 751 F.2d 991, 993 (9th Cir. 1985).

Plaintiff has failed to establish a genuine issue of material fact as to her Rehabilitation Act claim. First, assuming for purposes of this motion that Plaintiff is disabled,[1] she has failed to prove that she is a "qualified individual with a disability." Defendant provided a job description, which purports to bear Plaintiff's signature, stating the requirements of Plaintiff's job, including the necessity of lifting up to seventy pounds." Ex. AA to Decl. of Rebecca S. Cohen, docket no. 22-3, at 7. Plaintiff conceded in deposition testimony that 90 to 95 percent of Plaintiff's job consisted of physical labor. Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 40-41. Plaintiff also conceded that she could not perform the requirements of the job within her medical restrictions, and was effectively asking for accommodation in the form of being allowed to perform just the non-physical elements of the job. Id. Consequently, as a threshold matter, Plaintiff is not a qualified individual with a disability because she cannot perform the essential functions of the position with or without accommodation. 29 C.F.R. § 1630.2(m) (2008). For this reason, the Court

---

[1] Defendant does not argue that Plaintiff is not disabled.

GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's Rehabilitation Act claim, docket no. 21, at 8.[2]

## B.  Disparate Treatment

In moving for summary judgment, Defendant argues that Plaintiff cannot establish disparate treatment under the Rehabilitation Act.  Motion for Summary Judgment, docket no. 21, at 13.  As with Defendant's argument regarding Plaintiff's accommodation claim, Defendant argues that, as a threshold matter, Plaintiff is not entitled to the protection of the Rehabilitation Act because she is not a qualified individual with a disability.  Id. at 14.  In addition, Defendant argues that, even if Plaintiff could meet the initial burden as to Plaintiff's disability, Defendant had legitimate non-discriminatory reasons for taking the actions Defendant took against Plaintiff, and that Plaintiff cannot show that those reasons were pretext for discrimination.  Id.

---

[2] Even assuming that Plaintiff could prove that she is a qualified individual with a disability, Plaintiff still could not make at least a facial showing that *reasonable* accommodation is possible where Plaintiff proposed that she be allowed to perform the relatively small non-physical portions of her job.  Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 40-41.  See Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir. 1991) (holding that an accommodation that eliminated an essential job function of the position of mail distribution clerk with USPS was not reasonable).  Moreover, Plaintiff does not dispute that she never responded to Defendant's letter dated May 24, 2004, in which Defendant informed Plaintiff that Plaintiff could be removed from USPS, and informed Plaintiff of various options Plaintiff could explore.  Second Attachment to Compl., docket no. 3-3, at 7. Furthermore, Plaintiff does not dispute that Defendant granted her extended medical leave and placed her in a temporary light duty position.  Thus, even if Plaintiff was a qualified individual with a disability, the Court would still grant Defendant's Motion as to the Rehabilitation Act claim.

To state a prima facie case of disparate treatment under the Rehabilitation Act, a plaintiff must demonstrate that the plaintiff: (1) is a person with a disability; (2) is otherwise qualified for employment; and (3) suffered discrimination because of a disability. Walton v. U.S. Marshals Svc., 492 F.3d 998, 1005 (9th Cir. 2007). Then, if the plaintiff makes out the prima facie case, the burden of production shifts to the defendant employer to show that the defendant had a legitimate non-discriminatory reason for the action. Snead v. Metr. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001). If the defendant meets that burden by showing a legitimate non-discriminatory reason, the burden shifts to the plaintiff to prove that the defendant's reason was a pretext for disability discrimination. Id. A plaintiff may succeed in showing pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Id. (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)). Ultimately, a disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting the prima facie case if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons. Id.

Plaintiff has not established a prima facie case of disparate treatment on account of disability. First, as with Plaintiff's reasonable accommodation claim, as a threshold matter, Plaintiff has not established that she is otherwise qualified for employment,

and thus Plaintiff is not entitled to the protections of the Act. Second, even if Plaintiff was otherwise qualified, she has offered no alleged facts at all linking any actions taken by Defendant to Plaintiff's alleged disability. Third, even assuming *arguendo* that Plaintiff could make out the prima facie case, Defendant has offered legitimate non-discriminatory reasons for Defendant's actions for which Plaintiff has offered no evidence supporting pretext. Thus, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's disparate treatment on account of disability claim, docket no. 21, at 13.

## III.   Plaintiff's Title VII and ADEA Claims

Plaintiff has also alleged that Defendant discriminated against her on the basis of her race or color, religion, sex, national origin, and age, and that Defendant retaliated against Plaintiff for protected activity. Compl., docket no. 3, at 3; First Attachment to Compl., docket no. 3-2, at 1-3.

### A.   Race or Color

Plaintiff has alleged discrimination by Defendant on account of her race or color. Compl., docket no. 3, at 3. As to any specific alleged facts, Plaintiff states that on April 28, 2001, she complained to Dennis Lakey that a co-worker, Jai Ko, called her a "nigger/black bitch." First Attachment to Compl., docket no. 3-2, at 2. Plaintiff states that Mr. Lakey "believed that this incident was not important and showed no concern about [Plaintiff's] safety." Id. In support of Plaintiff's claims regarding this specific incident, Plaintiff provided her own narrative description of the incident, dated

May 8, 2001 (the statements supplied by Plaintiff regarding this incident indicate that it took place on May 8, 2001, rather than April 28, 2001). <u>Id.</u> at 10.  However, Plaintiff's narrative description does not contain any reference to the alleged racial insult.  <u>Id.</u>  As additional support, Plaintiff supplied a written statement by supervisor Conrad R. Lobo, dated May 9, 2001, in which Mr. Lobo states that he witnessed the incident between Jai Ko and Plaintiff, at which time Mr. Lobo gave Jai Ko "a direct order" to leave the building, which Mr. Ko complied with.  <u>Id.</u> at 11.  As with Plaintiff's own written account, Mr. Lobo's statement makes no mention of a racial insult.  <u>Id.</u>  Also, Plaintiff provided the written statement of an acting supervisor, James Mason, which tracks closely with Plaintiff's and Mr. Lobo's statements, but again makes no mention of a racial insult.  <u>Id.</u> at 12.

In moving for summary judgment, Defendant argues that Plaintiff has no evidence that Defendant's actions were motivated by race or color, that Defendant had legitimate non-discriminatory reasons for those actions, and that Plaintiff cannot show pretext.  Motion for Summary Judgment, docket no. 21, at 15.  As to the alleged remark made by Jai Ko on or about April 28, 2001, Defendant argues that Jai Ko was Plaintiff's co-worker, not supervisor, and that the alleged remark is uncorroborated. <u>Id.</u> at 19.  Moreover, Defendant argues, Plaintiff has not provided any evidence linking the alleged remark to any employment decisions affecting Plaintiff, and in any event, the alleged remark was made years prior to the employment actions in question.  <u>Id.</u>  In support of this argument, Defendant cites portions of Plaintiff's deposition in which

Plaintiff makes only vague references to how she may have suffered disparate treatment on account of her race and in which Plaintiff references, but declines to provide, specifics as to other workers who were treated differently than Plaintiff. Motion for Summary Judgment, docket no. 21, at 18 (citing Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 71-73).

As to Plaintiff's fourteen-day suspension and eventual termination, as with Plaintiff's reasonable accommodation claim, Defendant argues that Defendant had legitimate non-discriminatory reasons for those actions. Motion for Summary Judgment, docket no. 21, at 15.

Under Title VII, all personnel actions affecting employees in, *inter alia*, the USPS, shall be made free from any discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16(a) (2008). Though the term "personnel actions" is not defined in the statute, disparate treatment theory has consistently focused on "ultimate employment decisions," including for example, hiring, granting leave, discharging, promoting, and compensating. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (attempting to define "personnel actions" under 42 U.S.C. § 2000e-16(a)).

To establish a prima facie case of discrimination on account of race or color under Title VII, a plaintiff must offer proof that: (1) the plaintiff belongs to a class of persons protected by Title VII; (2) the plaintiff performed her or his job satisfactorily; (3) the plaintiff suffered an adverse employment action; and (4) the plaintiff's

employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class. Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Then, if the plaintiff establishes a prima facie case, there is a presumption that the employer undertook the challenged employment action based on an impermissible factor. Id. at 1028. A defendant-employer can rebut this presumption by producing admissible evidence of a legitimate non-discriminatory reason for the action. Id.

Once the defendant has come forward with a legitimate non-discriminatory reason, a plaintiff may defeat summary judgment if, based on the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged action on account of an impermissible factor. Cornwell, 439 F.3d at 1028. There are two ways in which a plaintiff in a disparate treatment action can meet the standard of proof required to defeat summary judgment. Id. First, the plaintiff may offer direct or circumstantial evidence that a discriminatory reason more likely motivated the employer, or the plaintiff may offer evidence that the employer's explanation is unworthy of credence and may be a pretext. Id. As to proof of pretext, the plaintiff must bring forth evidence that is specific and substantial in order to create a genuine issue of material fact. Id. at 1029. When evidence to refute the defendant's legitimate non-discriminatory reason is totally lacking, summary judgment is

appropriate even though the plaintiff may have established the prima facie case. Wallis v. J.R. Simplot Co., 26 F.3d 885, 890-91 (9th Cir. 1994).

In the Title VII context, a stray remark or isolated discriminatory comment is insufficient to establish discrimination. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990). However, an employer is liable for the discriminatory actions of an employee exhibiting discriminatory animus if the employee influenced or participated in the adverse employment decision. Poland v. Chertoff, 494 F.3d 1174, 1183 (9th Cir. 2007) (citing Abramson v. William Patterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001)).

Assuming that Plaintiff has made out a prima facie case,[3] Defendant has offered a legitimate non-discriminatory reason for Plaintiff's suspension and termination—that is, that Plaintiff was AWOL and Plaintiff could not perform the essential functions of Plaintiff's job. In response, Plaintiff has not offered any direct or circumstantial evidence that a discriminatory reason more likely motivated Defendant's actions, nor has Plaintiff offered any specific or substantial evidence of pretext. As to Plaintiff's allegation that a co-worker made a racist remark, assuming the remark was made, it was made by a co-worker, remote in time from Plaintiff's suspension and termination, and is thus the type of stray remark held not to amount to discrimination. Merrick, 892 F.2d at 1438. Furthermore, though the written statements Plaintiff submitted regarding

---

[3] Rather than arguing that Plaintiff has not established a prima facie case, Defendant primarily argues that Defendant had legitimate non-discriminatory reasons for Defendant's actions.

the incident with Jai Ko make no mention of the alleged remark, assuming the remark was made, the letter from supervisor Conrad R. Lobo conflicts with Plaintiff's contention that no action was taken, where by Mr. Lobo's account, a "direct order" was given to Mr. Ko to leave the building. Finally, there is no evidence that the alleged remark influenced the personnel actions taken by Defendant. Therefore, where Plaintiff has offered no evidence that Defendant's actions were motivated by Plaintiff's race or color, the Court GRANTS Defendant's Motion for Summary Judgment as to discrimination on account of race or color, docket no. 21, at 18.

**B. Religion**

Plaintiff also claims that Defendant discriminated against her on the basis of religion. Compl., docket no. 3, at 3. However, a review of the attachments to Plaintiff's Complaint as well as Plaintiff's Response to Defendant's Motion for Summary Judgment reveals no mention of Plaintiff's religion, or any alleged facts suggesting that Defendant was aware of Plaintiff's religion or took any action against her based on such awareness.

In moving for summary judgment, Defendant argues that, assuming Plaintiff can establish a prima facie case for religious discrimination, Plaintiff has produced no evidence of pretext that would defeat Defendant's legitimate non-discriminatory reasons for Defendant's actions. Motion for Summary Judgment, docket no. 21, at 18. In particular, Defendant points to Plaintiff's deposition testimony in which Plaintiff only speculated that Defendant was even aware of Plaintiff's religion or treated

Plaintiff differently on account of that religion. Motion for Summary Judgment, docket no . 21, at 17-18 (citing Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 68; 74-75); Decl. of Dennis W. Lakey, docket no. 23, at 1, ¶ 3 (stating that Mr. Lakey was unaware of Plaintiff's religion).

Like Plaintiff's other Title VII claims, the burden-shifting framework of McDonnell Douglas applies to Plaintiff's religious discrimination claim. Bodett v. Coxcom, Inc., 366 F.3d 736, 743 (9th Cir. 2004).

Plaintiff has not successfully rebutted Defendant's proffered legitimate non-discriminatory reasons for Defendant's personnel actions. First, Plaintiff has not alleged *any* facts in Plaintiff's Complaint supporting a claim of religious discrimination other than a bare assertion in the Complaint. Nowhere in the attachments to Plaintiff's Complaint does she identify her religion, or how her religion might relate to any actions by Defendant. Consequently, where Plaintiff has not shown that Defendant's legitimate non-discriminatory reasons for Defendant's actions were a pretext for religious discrimination, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's religious discrimination claim, docket no. 21, at 17.

## C. Sex

As with Plaintiff's religious discrimination claim, Plaintiff does not appear to allege any facts in support of her claim of sex discrimination. Compl., docket no. 3,

at 3.  However, Plaintiff does allege in her Response that she was the only "[f]emale, African-American working the Dock Tech position."  Response, docket no. 32, at 6.  In addition, in Plaintiff's deposition, she stated, "I think calling someone a nigger or black bitch . . . is saying something about someone's gender."  Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 78.  However, when Defendant asked Plaintiff in that portion of the deposition how she heard this alleged comment, she responded, "I don't want to get into that."  Id.

In moving for summary judgment, Defendant argues that Plaintiff has offered nothing more than speculation and conclusory allegations supporting Plaintiff's claim that Defendant's actions were motivated by Plaintiff's sex.  Motion for Summary Judgment, docket no. 21, at 19 (citing Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 74-75).

Like Plaintiff's other Title VII claims, the burden-shifting framework of McDonnell Douglas applies to Plaintiff's sex discrimination claim.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002).

Plaintiff has failed to rebut Defendant's proffered legitimate non-discriminatory reason for Defendant's actions.  First, Plaintiff's Complaint offers no alleged facts relating to sex discrimination.  Second, Plaintiff's single comment in her Response regarding being the only female African-American working in a particular position on a particular shift does not support a showing of pretext or inference of discrimination on account of sex.  Third, when pressed in Plaintiff's deposition as to why she

believed Defendant had discriminated against her on the basis of sex, Plaintiff was vague and refused to discuss a biased comment that was allegedly made. Thus, considering that Plaintiff has offered almost no evidence concerning a claim of sex discrimination and has not rebutted Defendant's proffered legitimate non-discriminatory reasons for Defendant's actions, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's sex discrimination claim, docket no. 21, at 19.

### D. Retaliation

Plaintiff has also alleged that she suffered "reprisal based on harassment" by Defendant. First Attachment to Compl., docket no. 3-2, at 1. Though Plaintiff's Complaint is not entirely clear, she seems to base this claim on her allegation that she previously filed an EEO complaint against Dennis Lakey, "but . . . didn't follow through for fear of reprisal." Id. at 2. In addition, in Plaintiff's Response, she accuses Mr. Lakey of "retaliating" toward Plaintiff because she "had filed a grievance [previously]." Response, docket no. 32, at 5.

In moving for summary judgment, Defendant argues that Plaintiff cannot show a causal link between Plaintiff's EEO activity and Defendant's actions where the EEO activity took place years before those actions. Motion for Summary Judgment, docket no. 21, at 22.

Title VII prohibits employers from discriminating against an employee because that employee has opposed any practice made an unlawful employment practice, or

because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing covered under the statute. 42 U.S.C. § 2000e-3(a) (2008). To make out a prima facie case of retaliation, an employee must show that: (1) the employee engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). As to this last element, a court may not infer causation from temporal proximity unless the time between the employer's knowledge of the protected activity and the adverse employment action is very close. Manatt v. Bank of Am., 339 F.3d 792, 802 (9th Cir. 2003) (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (noting that a lapse of even three months is too long to infer causation)). If the plaintiff can make out the prima facie case, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the defendant's actions. Id. Then, if the defendant can provide a legitimate non-discriminatory reason, the burden shifts to the plaintiff to prove pretext. Id.

Plaintiff has failed to establish a prima facie case of retaliation. Though Plaintiff was previously engaged in EEO activity and was later suspended and removed, Plaintiff has brought forth no facts as to an alleged causal link between the activity and Defendant's actions, particularly where Plaintiff's EEO Complaint was filed May 27, 1998, but Plaintiff's suspension and removal did not take place until 2004. Ex. V to Decl. of Rebecca S. Cohen, docket no. 22-2, at 53. However, even

assuming Plaintiff could make out a prima facie case for retaliation, Defendant has offered legitimate non-discriminatory reasons for Plaintiff's suspension and removal, which Plaintiff has not rebutted. Thus, where Plaintiff has not made a prima facie case for retaliation and could not otherwise rebut Defendant's legitimate non-discriminatory reasons for Defendant's actions, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim, docket no. 21, at 21.

**E. Age**

Plaintiff has alleged age discrimination. First Attachment to Compl., docket no. 3-2, at 1. Nothing in Plaintiff's Complaint or attachments reflects any alleged facts supporting Plaintiff's claim of age discrimination, apart from her inclusion of a date of birth reflecting that Plaintiff was born November 7, 1957, making Plaintiff forty-six years old when she was suspended and eventually removed from USPS. First Attachment to Compl., docket no. 3-2, at 1.

In moving for summary judgment as to Plaintiff's age discrimination claim, Defendant argues that Plaintiff's only specific testimony regarding this claim is the allegation by Plaintiff in her deposition that Dennis Lakey told Plaintiff in April 2003 that, "'when you get to a certain age . . . you shouldn't be doing this and that.'" Motion for Summary Judgment, docket no. 21, at 20 (quoting Ex. DD to Decl. of Rebecca S. Cohen, docket no. 22-3, at 72). As to the alleged statement, Defendant argues that it is uncorroborated and would have taken place months before Plaintiff's suspension and removal. Motion for Summary Judgment, docket no. 21, at 20.

Under the ADEA, all personnel actions affecting employees who are at least 40 years of age in the USPS shall be made free from any discrimination based on age. 29 U.S.C. § 633a(a) (2008). The same burden-shifting framework applied to Title VII discrimination claims also applies to claims arising under the ADEA. <u>Rose v. Wells Fargo & Co.</u>, 902 F.2d 1417, 1420 (9th Cir. 1990). An employee in an age discrimination case may proceed under two theories of liability: disparate treatment or disparate impact. <u>Id.</u> at 1421. Proof of disparate treatment requires a showing that the employer treats some people less favorably than others because of their age. <u>Id.</u> In contrast, under a disparate impact theory, the employee must actually prove the discriminatory impact of a facially-neutral employment practice. <u>Id.</u>

An employee may establish a prima facie case of age discrimination based on disparate *treatment* by showing that the employee: (1) was a member of the protected class; (2) was performing the employee's job in a satisfactory manner; (3) was discharged; and (4) was replaced by a substantially-younger employee with equal or inferior qualifications. <u>Rose</u>, 902 F.2d at 1421. In order to establish a prima facie case of disparate *impact* based on age, the employee must: (1) identify the specific employment practice or selection criteria being challenged; (2) show disparate impact; and (3) provide statistical evidence substantial enough to raise in inference of causation. <u>Id.</u> at 1424. Regardless of the theory pursued by the plaintiff, once the prima facie case is made out, the burden shifts to the defendant to offer a legitimate non-discriminatory reason for the employment decision. <u>Id.</u> at 1420. If the defendant

comes forth with a legitimate non-discriminatory reason, the burden then shifts back to the plaintiff to show that the reason was a pretext for discrimination. Id. at 1420-21.

Plaintiff has not brought forth any alleged facts that would support a prima facie case of age discrimination as to disparate treatment or impact. As to disparate treatment, though Plaintiff was at least forty years of age at the time of Defendant's actions, assuming Plaintiff was performing her job in a satisfactory manner, she has not come forth with any alleged facts showing that she was replaced by a substantially-younger employee with equal or inferior qualifications. With respect to disparate impact, Plaintiff has not brought forth any alleged facts regarding impact or causation. Moreover, even assuming Plaintiff could make out a prima facie case of age discrimination, Defendant has offered legitimate non-discriminatory reasons for Defendant's actions, and Plaintiff has not shown pretext. Because Plaintiff has not brought forth any alleged facts supporting either a prima facie case or pretext, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's age discrimination claim, docket no. 21, at 20.

### F.  National Origin

Plaintiff also claims discrimination on account of national origin. Complaint, docket no. 3, at 3. However, Plaintiff does not appear to allege what her national origin is in the Complaint, or how Defendant discriminated against her on account of national origin. Moreover, Plaintiff did not claim discrimination on account of national origin during the EEO process. Ex. Y to Decl. of Rebecca S. Cohen, docket

no. 22-3, at 2.  To preserve her right to maintain a suit alleging employment discrimination against an agency of the United States, a claimant must exhaust her administrative remedies by filing a claim with her agency.  <u>Leorna v. U.S. Dep't of State</u>, 105 F.3d 548, 550 (9th Cir. 1997).  Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite, and the jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation.  <u>Leong v. Potter</u>, 347 F.3d 1117, 1122 (9th Cir. 2003) (internal citations omitted).

A court may, *sua sponte*, grant summary judgment if the standards of Fed. R. Civ. P. 56 are met and the litigants are given reasonable notice.  <u>Buckingham v. U.S.</u>, 998 F.2d 735, 742 (9th Cir. 1993).  The parties were given reasonable notice by Minute Order, docket no. 34, as to Plaintiff's national origin claim.  Defendant responded, but Plaintiff did not.

Plaintiff's national origin claim fails because she did not exhaust her administrative remedies.  However, even if Plaintiff had included her national origin claim in her EEO Complaint, her claim here would still fail as she has failed to make out a prima facie case of discrimination, and in any event, as with Plaintiff's other claims, has not rebutted Defendant's proffered legitimate non-discriminatory reasons for Defendant's actions. Thus, the Court GRANTS, *sua sponte*, summary judgment dismissing Plaintiff's claim of discrimination on account of national origin, docket no. 3, at 3.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment, docket no. 21, and GRANTS, *sua sponte*, summary judgment dismissing Plaintiff's claim of discrimination on account of national origin, docket no. 3, at 3.

IT IS SO ORDERED.

DATED this 8th day of January, 2009.

/s Thomas S. Zilly

_____

THOMAS S. ZILLY
United States District Judge